UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JERRY HARVEY AUDIO HOLDING, LLC,
and JERRY HARVEY AUDIO, LLC,

       Plaintiffs,                            Case No. 6:14-cv-02083-CEM-KRS

    v.

1964 EARS, LLC, and EASTERWOOD &
ASSOCIATES, LLC, d/b/a EARS 2 HEAR,

       Defendants.
_____/

## DECLARATION OF VITALIY BELONOZHKO IN SUPPORT OF DEFENDANT 1964 EARS, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

I, Vitaliy Belonozhko, hereby declare under penalty of perjury:

    1.    I am a member and the CEO of 1964 Ears, LLC ("1964 Ears"), a Defendant in this case. I am personally knowledgeable regarding the subject matter stated herein and make this declaration in support of 1964 Ears' Opposition to Plaintiffs' Motion for Temporary Restraining Order.

    2.    Plaintiffs have accused our V6, V6-Stage, V8, U6, U8, A10, and A12 models of IEMs of infringing Plaintiffs' '463 Patent. Those IEMs were introduced to the market before Plaintiffs sued as, as follows:

| Model | Date Introduced |
|---|---|
| V6 | October 2012, via Defendant's www.1964ears.com website |
| V6-Stage | August 2013, via Defendant's www.1964ears.com website |
| V8 | April 2014, via Defendant's www.1964ears.com website |

1

| U6  | November 5, 2014, via Defendant's Kickstarter campaign |
| --- | --- |
| U8  | November 5, 2014, via Defendant's Kickstarter campaign |
| A10 | November 5, 2014, via Defendant's Kickstarter campaign |
| A12 | November 5, 2014, via Defendant's Kickstarter campaign |

3.  Prior to the start of this lawsuit, we took part in a campaign on www.kickstarter.com, a generally accessible, crowd-source funding platform, equally accessible to anyone around the world. "Creators" (to use Kickstarter's terminology) post projects to Kickstarter's website. Interested "backers" from all over the world can submit "pledges" to a project, and in return, they generally receive a "reward." Once a Kickstarter project is successfully funded, the project terminates, and, under Kickstarter's terms of use, the project creator is required to fulfill each reward, i.e., to send each backer the appropriate award for that backer's pledge. Under Kickstarter's terms, if a project creator can't deliver the promised reward, the creator is ultimately required to refund the backer's pledges.

4.  Our Kickstarter campaign began on November 5, 2014, and was successfully funded (and thus ended) on December 13, 2014. This means that we were, under Kickstarter's terms, required to fulfill each pledge with the appropriate IEM before Plaintiffs sued us. The campaign included our U6, U8, A10, and A12 models, which are now Accused IEMs, as well as our U4 and U5 models, which are not accused of infringement.

5.  In total, we received 671 pledges, for all IEM models included in the campaign, not just Accused IEMs. 525 of those pledges were for Accused IEMs (U6, U8, A10, A12). And 248 of those 525 pledges were for our A10 and A12 models, which were originally slated for shipment in February 2015.

6.  Information about the total number of pledges we received for our campaign, as well as the expected shipping dates for IEMs in the campaign, is all publicly available at

our Kickstarter page.  Our projected ship dates, including a projected ship date of February 2015 for the A10 and A12 models, was publicly available at our Kickstarter page as of at least November 5, 2014, before page Plaintiffs sued us.  Our Kickstarter page is located at https://www.kickstarter.com/projects/1043330169/realloud-technology-that-saves-your-hearing-and-yo/description.

7. We have begun shipping the A10 and A12 IEMs to Kickstarter backers who pledged on those two models.  The A10 and A12 models are "custom," meaning they are made to fit a person's specific ear canal.  This means that each Kickstarter backer who pledged on an A10 or A12 IEM had to, at his own expense, obtain an impression of his ear canal, which he then shipped to us so that we could make his IEM.  The A10 and A12 models are not "off the shelf" products; we are not mass distributing them, we are simply sending them out to our Kickstarter backers.

8. On January 22-25, 2015, 1964 Ears attended the annual National Association of Music Merchants (NAMM) trade show in Anaheim, California.  We displayed our A10, and A12 models, as well as other models, at that show.  Plaintiffs (JH Audio) also attended the 2015 NAMM show.

9. 1964 Ears and JH Audio are not the only manufacturers of IEMs.  We aren't even the only manufacturers of IEMs with two low frequency, two mid frequency, and two high frequency drivers.  Heir Audio, Advanced Ears, Westone, Dream Earz, Alien Ears, Noble Audio, dBPlugz, Ultimate Ears, Insta-Mold, Apollo Audio Lab, InEarZ, EarSonics, Rooth, Unique Melody, and Vision Ears all also make IEMs, including IEMs with two low frequency, two mid frequency, and two high frequency drivers.

10. We understand that Plaintiffs have asked the court for a temporary injunction against us because of our Kickstarter shipments of A10 and A12 IEMs. We are not trying to "flood the marketplace" with new devices, we are just trying to fulfill the promises we long ago made to our supporters on Kickstarter. Again, these are promises we made before Plaintiffs ever sued us, as our campaign was complete before this suit was filed.

11. We understand that Plaintiffs are asking the Court to prevent us from making, using, selling, offering to sell, importing or distributing all of the Accused IEMs. The Accused IEMs are over half of our IEM models. They include the A10 and A12 models, currently shipping to Kickstarter backers, which are our new flagship models. If we are prevented from selling our Accused IEMs, this will cause us to lose over half of our revenue, which we anticipate will force us to lay off most of our employees. It is critical to our continued success that we be able to keep making, selling, offering to sell, etc. the Accused IEMs. Enjoining us would severely cripple and potentially destroy us.

12. There would an added harm to our goodwill and reputation if we are stopped from fulfilling the Kickstarter pledges. The campaign was complete before this suit was filed, and backers have been eagerly waiting for their IEMs ever since. Kickstarter is a unique environment that draws people who really support the project creators and really want to see those creators succeed. If we do not make good on our promises to our backers, it will destroy our good name, and cause us to lose customers in the future, too. We will be forced to refund the backers' money, and will lose money we started having to spend on making the involved IEMs, too. The loss of credibility were we forced to cancel our Kickstarter efforts is impossible to quantify. Going forward, people will "remember when" 1964 Ears had a

Kickstarter campaign and no one got anything from it, will steer clear of doing business with us, and will tell their friends to steer clear, too.

13. We understand that during prosecution for the '463 Patent, Jerry Harvey claimed that our V6 model IEM is "based on teachings of Applicant's embodiments," i.e., claimed that we had looked at the patent's application and used it to make our V6 IEM. This is not true. We did not know anything about the '463 Patent or its application before Plaintiffs sued us. The first time we saw the '463 Patent or any of its "teachings" was when we received the complaint in this lawsuit.

14. With respect to the dual high frequency drivers we use in the Accused IEMs, we do not "position" these drivers with respect to each other. We buy our dual high frequency drivers from a third party; they come already soldered together, in a pre-configured arrangement that we have no control over. As far as we know, Plaintiffs and other manufacturers of IEMs with dual high frequency drivers also buy their dual high frequency drivers from the same supplier, in a pre-configured arrangement, and do not themselves "position" the drivers with respect to each other.

15. If the Court enjoins us, temporarily or preliminarily, from selling, offering to sell, making, using, importing, or distributing our Accused IEMs, we anticipate that we would suffer costs and damages of at least $100,000 per month while the injunction was in place. This doesn't include our attorneys' fees. This is because such an injunction would effectively shut down over half of our business, and would prevent us from selling our highest-profit products. As I said earlier, it would undoubtedly cause us to quickly lay off employees, and, if it persisted, would likely cause our business to completely collapse.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Dated: March 26, 2015

_____
Vitaliy Belonozhko

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 27, 2015, I filed a true and correct copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:  **Daniel Ben Ravicher, Esquire**, Ravicher Law Firm, 2000 Ponce De Leon Blvd., Suite 600, Cora Gables, FL 33134, dan@ravicher.com.

        s/ Delfina S. Homen_
        Hillary A. Brooks
        *Admitted Pro Hac Vice*
        Delfina S. Homen
        *Admitted Pro Hac Vice*
        MARGER JOHNSON & McCOLLOM, P.C.
        210 SW Morrison St., Ste. 400
        Portland, OR 97204
        (503) 222-3613
        hillary.brooks@techlaw.com
        delfina.homen@techlaw.com
        *Lead trial counsel for Defendant,*
        *1964 Ears, LLC*

        and

        Richard E. Fee
        Florida Bar No. 813680
        Kathleen M. Wade
        Florida Bar No. 127965
        FEE & JEFFRIES, P.A.
        1227 N. Franklin Street
        Tampa, Florida  33602
        (813) 229-8008
        rfee@feejeffries.com
        kwade@feejeffries.com
        *Local trial counsel for Defendant,*
        *1964 Ears, LLC*