UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JERRY HARVEY AUDIO HOLDING, LLC,**
**and JERRY HARVEY AUDIO, LLC,**

   **Plaintiffs,**       **Case No. 6:14-cv-02083-CEM-KRS**

  v.

**1964 EARS, LLC, and EASTERWOOD &**
**ASSOCIATES, LLC, d/b/a EARS 2 HEAR,**

   **Defendants.**

_____/

<u>**DEFENDANT 1964 EARS, LLC'S MOTION FOR RULE 11 SANCTIONS AND**</u>
<u>**REQUEST FOR ORAL ARGUMENT**</u>

Pursuant to Fed. R. Civ. P. 11(c), Defendant 1964 Ears, LLC ("Defendant") respectfully moves this Court on the following grounds for an order dismissing this suit as to Defendant, and awarding Defendant its costs and fees incurred in defending this suit:

(1)  Before filing this patent infringement lawsuit, Plaintiffs were required to engage in a reasonable prefiling investigation of their patent infringement claim;

(2)  Plaintiffs did not engage in a reasonable prefiling investigation before suing Defendant for patent infringement;

(3)  Had Plaintiffs engaged in a reasonable prefiling investigation, Plaintiffs would have discovered that Defendant does not infringe Plaintiffs' patent;

(4)  Pursuant to Fed. R. Civ. P. 11(c)(2), Defendant served the instant Motion on Plaintiffs and their counsel on April 29, 2015, but Plaintiffs failed to dismiss this suit as to

Defendant within the 21 day safe harbor provided under the Rule;

(5)    Accordingly, Plaintiffs should be sanctioned for their failure to conduct a reasonable prefiling investigation prior to bringing this meritless lawsuit.

WHEREFORE, Defendant respectfully requests that this Court:

a. Grant this motion;

b. Enter an order dismissing this suit as to Defendant and awarding Defendant its fees and costs incurred in defending this action and in preparing and presenting this Motion; and

c. Grant all such further relief as this Court deems just and appropriate.

## MEMORANDUM IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS

In accordance with Local Rule 3.01(b), Defendant submits this memorandum of law in support of its Motion.

## I.    INTRODUCTION

This lawsuit should be dismissed, and Defendant should be awarded its costs and fees incurred in defending this suit and in preparing and presenting this Motion.  Under Rule 11, Plaintiffs were required to conduct a reasonable prefiling investigation before filing suit, including comparing the construed patent claims to the actual accused devices to confirm infringement.  Plaintiffs' pleadings show that Plaintiffs did not conduct a reasonable prefiling investigation, a conclusion that is bolstered by the fact that had Plaintiffs conducted a reasonable prefiling investigation, they would have discovered the accused devices do not read on the sole "novel" limitation.  Plaintiffs and/or their attorney must be sanctioned for their lack of a reasonable prefiling investigation.

## II.    STATEMENT OF FACTS

This lawsuit involves a single claim of infringement of U.S. Pat. No. 8,897,463 ("the

'463 Patent").[1]  Plaintiffs' original complaint alleged that Defendant's V6, V6-Stage, and V8

IEMs directly infringed claim 1 of the '463 Patent.[2]  (*See* Dkt. #1, ¶¶ 21-22.)  Just days after

Defendant filed a motion to dismiss for lack of personal jurisdiction, Plaintiffs filed an

amended complaint, expanding their allegations to include direct and indirect infringement of

all claims of the '463 Patent, and expanding the accused devices to "at least each of the A12,

A10, V8, V6-Stage, V6, U8 and U6" IEMs (collectively, "Accused Devices").  (*See* Dkt.

#22, ¶ 36.)  Plaintiffs simultaneously filed a preliminary injunction motion and a declaration

from Jerry Harvey, the '463 Patent's sole inventor and Plaintiffs' founder, owner, and

manager.  (*See* Dkt. #23-24.)  Both filings largely mirror the amended complaint.

The only independent claim for which specific allegations of infringement are

provided in Plaintiffs' complaints and preliminary injunction filings is claim 1, which

requires a canalphone housing, two low frequency drivers, two midrange frequency drivers,

and two high frequency drivers.  (*See* Dkt. #22, ¶ 21; Dkt. 22-1 at 9.)  Claim 1 additionally

includes requires the following[3]:

1.  "the first high frequency driver and the second high frequency driver each produce
    similar frequencies"

---

[1] Plaintiffs' amended complaint, filed March 4, 2015, also includes a claim of patent infringement against Easterwood & Associates, LLC, d/b/a Ears 2 Hear, who is not a party to the instant Motion.

[2] When this suit was originally filed, only Jerry Harvey Audio Holding, LLC was a plaintiff.  (*See* Dkt. #1.) For brevity, Defendant refers collectively to both Plaintiffs throughout this Motion.

[3] These limitations are believed to be indefinite and not enabled, and in any event, there has been no construction of the claims at issue.

2. "the first high frequency driver and second high frequency driver are positioned where the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion"

3. "the first high frequency driver and the second high frequency driver produce distinguishable frequencies to a person using the system comprising 12,000 hertz to 18,000 hertz"

(collectively, "the Specific Limitations").  (Dkt. 22-1 at 9.)  During prosecution of the '463 Patent, the Patent Office determined that the only "patentable" feature was the second Specific Limitation, namely, the two high frequency drivers "are positioned where the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion."[4] (*See* Dkt. #44-5 at 16-17.)

From the "facts" alleged in the complaints and preliminary injunction filings, it is evident that Plaintiffs' infringement analysis is based solely on Plaintiffs' review of advertising images and statements on Defendant's websites.[5]  Plaintiffs repeatedly point to images from Defendant's websites as demonstrating that the canalphone housing limitation of claim 1 is met.  (*See* Dkt. #22, ¶¶ 25-26, 28, 39, 47; Dkt. #23 at 6-8, 11-12; Dkt. #24, ¶¶ 9-10, 14, 23, 30.)  Plaintiffs also repeatedly point to advertising statements on Defendant's websites as demonstrating that the driver limitations of claim 1 are met.  (*See* Dkt. #22, ¶¶ 27, 29-32, 40, 43, 45, 48, 51, 53, 55; Dkt. #23 at 7-9, 11-14; Dkt. #24, ¶¶ 12-13, 15-17, 19-21, 24, 27, 29, 31, 34, 36, 39.)  As to the Specific Limitations, for which no evidence is

---

[4] Defendant's invalidity and infringement investigation is ongoing.  Defendant does not admit that the oscillation limitation, or any other limitations of any claims, is patentable, and expressly reserves the right to challenge the same.   Additionally, Defendant addresses only one factor demonstrating non-infringement and expressly reserves additional challenges for a later date.

[5] For brevity, this Motion refers to Defendant's www.1964ears.com and www.1964adel.com websites, as well as Defendant's campaign page on the third party website www.kickstarter.com, as "Defendant's websites."

present on Defendant's websites,[6] Plaintiffs perfunctorily conclude that each Specific Limitation "must" be present, and that there is "no indication on [Defendant's] website or any other reason to believe" that they are not present.  (*See* Dkt. #22, ¶¶ 41-43, 49-51; Dkt. #23 at 11-13; Dkt. #24, ¶¶ 25-27, 32-34.)

Nowhere in any of Plaintiffs' filings do Plaintiffs refer to any comparison of the ***actual Accused Devices*** to any claims.  And nowhere in any of Plaintiffs' filings do Plaintiffs refer to any testing or analysis of ***actual Accused Devices*** to confirm that the Specific Limitations are actually met.  This is true even of the Harvey declaration; indeed, Mr. Harvey repeatedly states that "it is my opinion" that various limitations are met based on information on Defendant's websites.  (*See* Dkt. #24, ¶¶ 28-29, 35-36, 38, 41.)  Mr. Harvey provides no factual basis for his "opinion" other than information on Defendant's websites.

Every Accused Device was available, openly and notoriously, ***before*** Plaintiffs instituted this lawsuit on December 19, 2014.  (Belonozhko Decl. ¶ 2.)   Every Accused Device was likewise available, openly and notoriously, ***before*** Plaintiffs filed their amended complaint and preliminary injunction filings on March 4, 2015. (*Id.*) Yet, owing to Plaintiffs' reliance on Defendant's website as the factual support for its infringement claims, it is evident Plaintiffs did not purchase and analyze any of the Accused Devices before filing suit.

The conclusion that Plaintiffs failed to conduct a reasonable prefiling investigation is buttressed by the fact that the dual high frequency drivers in the Accused Devices ***do not*** meet the "the first high frequency driver and second high frequency driver are positioned

---

[6] Although Defendant's websites list the overall "frequency response" for each Accused Device, they do not specify the frequency range at which the high frequency drivers operate—a limitation of claim 1.

where the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion" Specific Limitation.[7]   (Belonozhko Decl. ¶ 3.)   Thus, the Accused Devices do not meet every limitation of claim 1, and do not infringe.   Plaintiffs could have discovered the non-infringing nature of the Accused Devices had they purchased and tested the devices prior to filing suit.   Instead, Plaintiffs chose to file without an adequate factual basis, and to maintain the suit even after receiving notice of the non-infringing nature of the Accused Devices and Defendant's intent to move for sanctions under Rule 11.[8]   Accordingly, this Motion follows.

### III.   ARGUMENT

#### a.   Legal Standards

Every paper filed in federal court must be signed by at least one attorney of record. Fed. R. Civ. P. 11(a).   By presenting a signed paper to the court, the attorney certifies that he has performed "an inquiry reasonable under the circumstances" and that, among other things, the "allegations and other factual contentions have evidentiary support."   Fed. R. Civ. P. 11(b); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Rule 11 determinations are a matter of regional circuit law, reviewed for abuse of

---

[7] This limitation is also present in independent claim 14, but not independent claim 9.   While Plaintiffs' pleadings only argue infringement of independent claim 1 and dependent claim 7, Plaintiffs alleged infringement of all 16 claims.   (*See* Dkt. #22, ¶ 38; Dkt. #23 at 10-11 n.5.)   Defendant's review is ongoing; Defendant does not admit, and expressly reserves the right to challenge, Plaintiffs' infringement allegations of all claims, including claim 9.   However, for purposes of this Motion, any potential valid infringement position on any other claims is irrelevant, as "sanctions may be based on a ***single*** invalid legal or factual theory, even if other asserted theories are valid.   Advancing even a single invalid theory forces the defendant to respond and to do work it should not have been required to do."   *Antonious v. Spalding & Evenflo Cos. Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002) (emphasis added) (citation omitted).

[8] Plaintiffs also chose to maintain this suit after receiving Defendant's opposition to Plaintiffs' TRO motion, which stated that Defendant does not itself "position" its dual high frequency drivers with respect to each other, another required feature of independent claims 1 and 9.   (*See* Dkt. #42 at 6-7; Dkt. #43, ¶ 14.)

discretion under the regional circuit's standard.  *Woods v. DeAngelo Marine Exhaust Inc.*, 692 F.3d 1272, 1278 (Fed. Cir. 2012).  In the Eleventh Circuit, "a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry."  *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995).

Factual claims are frivolous "if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis.  Thus, where no evidence or only patently frivolous evidence is offered to support factual contentions, sanctions can be imposed."  *Lawson v. Sec'y Dep't of Corr.*, 563 F. App'x 678, 680 (11th Cir. 2014); *see also Adams v. Austal, U.S.A, L.L.C.*, 503 F. App'x 699, 703 (11th Cir. 2013), *cert. denied sub nom.*, 133 S. Ct. 2866 (2013) ("In deciding whether the claims are objectively frivolous, the court must 'determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified.'" (quoting *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)).

The reasonableness of a prefiling investigation in a patent infringement suit is determined under Federal Circuit, not Eleventh Circuit, law.  *See Woods*, 692 F.3d at 1278, 1288-89; *Smart Options, LLC v. Jump Rope, Inc.*, No. 12 C 2498, 2013 WL 500861, at *2 (N.D. Ill. Feb. 11, 2013) ("Federal Circuit law applies to the substantive issues of patent law, . . . such as what type of pre-filing investigation Rule 11 requires in the patent context.").  If an attorney fails to make a reasonable prefiling inquiry, "then the court must impose

sanctions despite the attorney's good faith belief that the claims were sound." *Jones*, 49 F.3d at 695.  The Rule 11 inquiry "focuses only on the merits of the pleading gleaned from facts and law known or available to the attorney at the time of filing." *Id.*

Finally, "[o]nce a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007).

### b.  Plaintiffs Failed to Conduct a Reasonable Prefiling Investigation

### i.  Plaintiffs Failed to Obtain and Test the Accused Devices

Rule 11 requires that the attorney compare the construed claims to the accused devices before filing suit.  *Q-Pharma Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004); *Antonious v. Spalding & Evenflo Cos. Inc.*, 275 F.3d 1066, 1073 (Fed. Cir. 2002). "The attorney may consult with his client but may not rely solely on the client's lay opinion that the accused device infringes the patent.  Instead, counsel must make a reasonable effort to determine whether the accused device satisfies each of the claim limitations." *Antonious*, 275 F.3d at 1074.

It is evident from Plaintiffs' pleadings that Plaintiffs' infringement analysis consists solely of comparison of the claims against advertising images and statements on Defendant's websites.  Even the Harvey declaration, filed to support "factual" infringement allegations made in Plaintiffs' preliminary injunction motion, is completely reliant on Defendant's websites, with Mr. Harvey repeatedly concluding that "it is my opinion" the Accused Devices infringe based on Defendant's websites.  (*See generally* Dkt. #24.)  Nowhere in any of Plaintiffs' filings do Plaintiffs refer to any comparison of the ***actual Accused Devices*** to

the patent claims, despite the fact that all of the Accused Devices were available, for a nominal price, prior to Plaintiffs' institution of this lawsuit.

To succeed on the merits of their preliminary injunction motion, Plaintiffs must show they will likely prove infringement. *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1342, 1350 (Fed. Cir. 2001). The second step in the infringement analysis is comparing the properly construed claims to the accused devices. *Solvay S.A. v. Honeywell Int'l, Inc.*, 622 F.3d 1367, 1379 (Fed. Cir. 2010). If ever there were a time to submit analysis of the actual Accused Devices, rather than advertising statements, Plaintiffs' filing of a motion for preliminary injunction was that time. Yet Plaintiffs instead continue to rely exclusively on information on Defendant's websites. Plaintiffs' failure to obtain and analyze the Accused Devices is evident from Plaintiffs' continued, exclusive reliance on Defendant's websites to support its infringement allegations.

What constitutes a "reasonable" effort depends on the circumstances. For instance, where the accused device can be obtained for a nominal price, and analyzed against the claims prior to filing, it is unreasonable to fail to obtain a sample of the device and compare the sample to the claims. *See, e.g.*, *Judin v. United States*, 110 F.3d 780, 784-85 (Fed. Cir. 1997) (finding it unreasonable to fail to obtain a sample of the accused device, a bar code scanner, when the sample could have been obtained for a nominal price and infringement could not be determined without inspection of a sample). In contrast, where access to the accused device cannot be readily obtained, and where a reasonable basis for infringement can be established through other evidence, failure to obtain a sample and compare the sample to the claims prior to filing suit may be reasonable. *See, e.g.*, *Intamin Ltd. v. Magnetar Techs.*

*Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) (finding it was reasonable, under the circumstances, for patentee to rely on publicly available documents and photographs of the accused roller coaster braking system, owing to "unreasonable obstacles to any effort to obtain a sample" of the system or to physically inspect the system).

Under the circumstances, it was unreasonable for Plaintiffs to rely on Defendant's websites, rather than obtain and analyze samples of the Accused Devices. Like the scanners in *Judin*, the Accused IEMs could all be obtained for a nominal price prior to filing suit. *Judin*, 110 F.3d at 782; *Intamin*, 483 F.3d at 1338 (discussing *Judin*). Failure to obtain and reverse engineer samples is only reasonable where, like in *Intamin*, there are unreasonable hurdles to obtaining or reverse engineering the device, *and* there is other legitimate evidence supporting infringement. Here, there were no unreasonable hurdles to obtaining samples nor to reverse engineering the Accused Devices, and there was no other legitimate evidence from which Plaintiffs could determine infringement. *Cf. Network Caching Tech., LLC v. Novell, Inc.*, No. C-012079 VRW, 2003 WL 21699799, at *6 (N.D. Cal. Mar. 21, 2003) (noting "the limitation of relying solely on marketing materials, white papers and other product documentation," and concluding that "looking at these indirect sources of information fails to satisfy the pre-filing investigation requirements described by" the Federal Circuit).

The unreasonableness of Plaintiffs' failure to obtain samples is particularly notable given Plaintiffs' arguments directed to the Specific Limitations. While Defendant's websites include basic information on the Accused Devices—how many drivers are in each device and the overall frequency response for each device—Defendant's websites do *not* include any information supporting Plaintiffs' conclusion that the Specific Limitations are met. Plaintiffs

try to brush this shortcoming under the rug by arguing that the Specific Limitations "must" be present because otherwise the Accused Devices would not be "an acceptable canalphone product" or would not "produce a satisfactory sound for users," and because there is "no indication on [Defendant's] website or any other reason to believe" the Specific Limitations are not met.  (*See* Dkt. #22, ¶¶ 41-43, 49-51; Dkt. #23 at 11-13; Dkt. #24, ¶¶ 25-27, 32-34.) Plaintiffs' unsupported (and unsupportable) conclusions are insufficient.

Several cases support the unreasonableness of Plaintiffs' reliance on Defendant's website under the circumstances.  For instance, in *Centillion Data Systems, LLC v. Convergys Corp.*, No. 104CV0073LJM-WTL, 2006 WL 20777 (S.D. Ind. Jan. 4, 2006), the plaintiff failed to obtain copies of the accused software and test the software to determine how it functioned prior to suing.  The plaintiff argued a third party analysis and publicly available information gave plaintiff sufficient grounds to conclude each element of the claims were met.  *Id.* at *2. The court disagreed. The materials plaintiff relied upon were "largely advertising fluff," and plaintiff's analysis of the software's features to develop its infringement theory "uses too many inferences that should have been investigated."  *Id.* at *2.  The plaintiff's materials did not constitute "the data [plaintiff] needed to ensure that [defendant's] software met every element of the claimed invention . . . . [Plaintiff] only had product features from which it inferred that [defendant's] software should perform in a certain way." *Id.* at *3.  The plaintiff's factual inquiry was objectively unreasonable because neither plaintiff nor its lawyers ever "actually tested the allegedly infringing products to see

if they met each of the [asserted] patent's limitations." *Id.* at *4.[9]

As in *Centillion*, Plaintiffs failed to obtain and test any Accused Devices prior to suing, instead relying on product features listed on Defendant's websites. Like in *Centillion*, this "advertising fluff" is insufficient to establish that *all* of the claim limitations are met, particularly the Specific Limitations. Defendant's repeated conclusory statements that the Specific Limitations "must" be met are inferences based on features listed on Defendant's website, which should have been investigated. Defendant's websites did not provide Plaintiffs with the information they needed to ensure that the Specific Limitations were met, making it unreasonable under the circumstances for Plaintiffs to rely on Defendant's websites rather than obtain and test the Accused Devices.

Similarly, in *Network Caching*, failure to obtain and reverse engineer the accused software before filing suit was unreasonable. Rather than directly examining the accused products, plaintiff relied on marketing materials "whose reliability and actual resemblance to the products in question is questionable." *Network Caching*, 2003 WL 21699799, at *7. The plaintiff did not deny that it "had the ability to obtain the allegedly infringing products and examine them to determine, for example, whether they operated materially in the manner described by the marketing materials." *Id.* Further, the plaintiff was aware of possible infringement more than 18 months before it filed suit. *Id.* Under the circumstances, failing to obtain and examine the accused products before suing was "both preposterous and unjustified." *Id.*[10]

---

[9] Despite finding the prefiling investigation to be unreasonable, *Centillion* did not award sanctions because of the defendant's multi-year delay in seeking sanctions. *Centillion*, 2006 WL 20777, at *4. No delay exists here.
[10] Despite finding the prefiling investigation unreasonable, *Network Caching* did not award sanctions because in

Like in *Network Caching*, Plaintiffs had the ability to obtain the Accused Devices and examine them prior to filing suit to determine whether they met the limitations, as the Accused Devices were all available prior to Plaintiffs' institution of this suit.  (Belonozhko Decl. ¶ 2.)  Moreover, as Defendant previously pointed out—and as Plaintiffs never denied—Plaintiffs unequivocally knew of at least Defendant's V6 IEM as of January 24, 2013, more than 22 months before Plaintiffs filed suit.  (*See* Dkt. #42 at 3.)  Plaintiffs had plenty of time to reasonably investigate their infringement claim *before* they sued.  Plaintiffs' failure to do so is unjustified, and is grounds for sanctions.

In *Smart Options*, the plaintiff's failure to obtain and test the accused smart phone app before filing suit was unreasonable.  *Smart Options*, 2013 WL 500861.  The accused app was readily available for download and use prior to filing, and had the plaintiff downloaded and used the app, it would have realized the app did not meet every limitation.  The plaintiff's "failure to avail itself of the easy, inexpensive opportunity to actually test and analyze [defendant's] product" was unreasonable.  *Id.* at *7.  The court granted defendant's motion, awarding defendant attorneys' fees incurred from plaintiff's filing of the frivolous complaint.  *Id.* at *9.

Like in *Smart Options*, Plaintiffs could have readily obtained the Accused Devices before suing.  Plaintiffs' failure to do so, and failure to test the Accused Devices, was

---

the Ninth Circuit, sanctions only apply to filings that are both made without a reasonable inquiry *and* are baseless; at the time of its decision, the court could not yet ascertain whether the infringement allegations were baseless.  *See Network Caching*, 2003 WL 21699799 at *6, *7-*8.  Defendant is not aware of any similar requirement in the Eleventh Circuit; rather, in the Eleventh Circuit, "[i]f the attorney failed to make a reasonable inquiry, then the court ***must*** impose sanctions despite the attorney's good faith belief that the claims were sound."  *Jones*, 49 F.3d at 695 (emphasis added).  In any event, as will be discussed *infra*, Plaintiffs' infringement claim *is* baseless, since the Accused IEMs do not meet all limitations of the claims.

unreasonable.  Under these circumstances, it is appropriate to impose sanction.

Finally, as discussed earlier, the second Specific Limitation—"the first high frequency driver and second high frequency driver are positioned where the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion"—was found by the Patent Office to be the *only* novel feature of the claims.  (*See* Dkt. #44-5 at 16-17.) Plaintiffs should have known that the limitation is critical, due to the Patent Office's finding that it is the only "patentable" feature.  The presence of this limitation *cannot* be established through conjecture of what "must" be there. In *Judin*, failure to obtain and test a sample device to confirm whether it satisfied two key claim limitations that were critical to patentability was unreasonable and violated Rule 11.  *Judin*, 110 F.3d at 782-83, 784-85. Like *Judin*, Plaintiffs' failure to obtain the Accused Devices and confirm that this Specific Limitation was present was unreasonable, particularly since, as discussed *infra*, the limitation is *not* present in the Accused Devices.

## ii. Plaintiffs Needed to Obtain and Test *Every* Accused Device Prior to Filing Suit

In this suit, Plaintiffs accuse seven IEMs of infringement.  Where multiple products are accused, it may not always be necessary to inspect every accused product separately to confirm infringement, *if* there is other evidence "sufficient to permit a reasonable inference that all the accused products infringe."  *Antonious*, 275 F.3d at 1075.  For instance, in *Antonious* the plaintiff obtained and tested only one of 21 accused golf clubs, pointing to defendant's marketing materials that stated all 21 clubs contained the same technology as supporting a reasonable inference that all 21 clubs infringed.  *Id.* at 1076.  The Federal Circuit remanded to the district court to determine whether this marketing statement was

14

sufficient, although the court was skeptical that it was.  *See id.*

Here, Plaintiffs' only "evidence" is marketing statements on Defendant's websites buttressed with opinions of what else "must" be present.  None of those statements support a reasonable conclusion that all of the Accused Devices contain each of the Specific Limitations.  Accordingly, Plaintiffs needed to obtain and test *every* Accused Device prior to filing suit to conduct a reasonable prefiling inquiry.  Instead, Plaintiffs did not obtain and test *any* Accused Device.  Even under the most generous reading of *Antonious*, Plaintiffs' failure to obtain and test every Accused Device was unreasonable.  *Accord Network Caching*, 2003 WL 21699799 at *7 (noting, in case involving multiple accused products, that plaintiff "seems to have engaged in even less inquiry than the counsel in *Antonious*, as [plaintiff] apparently failed to examine *any* of the accused products directly before filing suit"; Rule 11 violation found).

### iii.  Plaintiffs' Failure to Test the Accused Devices was Unreasonable

The Federal Circuit's decision in *Q-Pharma*, a case involving alleged infringement of a patent for CoQ10 lotion, is sometimes broadly (and incorrectly) cited as support for the proposition that a plaintiff does not need to test an accused product to confirm infringement before suing.  This reading of *Q-Pharma* goes too far.

In *Q-Pharma*, prior to filing suit, the patentee conducted a reasonable, albeit broad, claim construction of the asserted claim, from which the patentee concluded that any "therapeutically effective amount" of CoQ10 would infringe.  *Q-Pharma*, 360 F.3d at 1301. The patentee purchased a sample of the accused lotion, and compared the construed claim against both the labeling on the sample and defendant's advertising statements, which touted

the "therapeutic effectiveness" of the defendant's CoQ10 lotion.  *Id.* at 1302.  The patentee

did not conduct a simple chemical analysis of the accused lotion.  *Id.*  Because of the

patentee's reasonable claim construction, which did not require a specific amount of CoQ10,

the patentee's reliance on labeling and advertising, without testing, was reasonable under the

circumstances.  *Id.* at 1302.

As is evident from *Q-Pharma*'s fact-specific holding, *Q-Pharma* "does not stand for

the broad proposition that a plaintiff need not obtain the allegedly infringing product and test

it before filing a patent infringement suit."  *Morningware, Inc. v. Hearthware Home Prods.,*

*Inc.*, No. 09 C 4348, 2011 WL 4729922, at *4 (N.D. Ill. Oct. 6, 2011).  Indeed, *Centillion*

found that the plaintiff's reliance on *Q-Pharma* was misplaced:

> Unlike in *Q-Pharma* where the patentee had obtained all the necessary information
> from advertisements and the actual label from the product itself to determine that the
> necessary ingredient met the patentee's interpretation of the claims, [plaintiff] did not
> have the necessary factual information from [defendant's] product literature, website
> or [plaintiff's] independent investigator, to determine whether the "means for
> transferring" limitation was met.

*Centillion*, 2006 WL 20777, at *3.  Accordingly, *Centillion* found the plaintiff's factual

inquiry to be objectively unreasonable, and awarded sanctions.  *Id.* at *4.

Like *Centillion*, here, too, Plaintiffs did not have the necessary factual information

from Defendant's websites to determine whether any of the Specific Limitations were met.

The goods in question are not chemical preparations labeled according to federal law.  Thus,

there is no "list of ingredients" for the Accused Devices.  Defendant's websites provide only

basic features of the Accused Devices; there is no information as to whether the high

frequency drivers "each produce similar frequencies," nor whether the high frequency drivers

"are positioned where the oscillation of one interacts with the oscillation of the other to

reduce harmonic distortion," nor whether the high frequency drivers "produce distinguishable frequencies to a person using the system comprising 12,000 hertz to 18,000 hertz." In other words, Defendant's websites *do not* specify whether the Accused Devices meet the Specific Limitations.

Under the circumstances, it was incumbent upon Plaintiffs to obtain and test each Accused Device to ensure each Specific Limitation was met, rather than to simply infer that they "must" be met because the Accused Devices are advertised as having two high frequency drivers. *See Centillion*, 2006 WL 20777 at *3 (finding plaintiff's inferences, drawn from advertising for the accused products, that the accused products "should perform in a certain way" were insufficient to establish a reasonable prefiling investigation). Instead, Plaintiffs failed to obtain any of the Accused Devices. *Q-Pharma* is legally and factually inapposite and therefore cannot excuse Plaintiff's lack of a reasonable prefiling investigation.

### iv.  Plaintiffs' Infringement Position is Factually Inaccurate, Further Demonstrating the Unreasonableness of Plaintiffs' Investigation

If there were any doubt that Plaintiffs failed to conduct a reasonable prefiling investigation, that doubt is dispelled by the fact that the Accused Devices ***do not*** meet the limitation "the first high frequency driver and the second high frequency driver are positioned where the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion." (Belonozhko Decl. ¶ 3.) Accordingly, the Accused Devices do not infringe. *Bayer v. AG Elan Pharma. Res. Corp.*, 212 F.3d 1241, 1248 (Fed. Cir. 2000) ("Literal infringement requires the patentee prove that the accused device contains each limitation of the asserted claim(s). If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." (citations omitted)).

Defendant discovered this limitation was not met through testing.  Plaintiffs likewise could have discovered the limitation was not met through testing.  Owing to Plaintiffs' decision to file suit, and continued insistence that every limitation, including the missing limitation, is met, it is obvious Plaintiffs did not obtain and test the Accused Devices before suing, for if they had, they would have readily discovered the Accused Devices do not infringe and ostensibly would have refrained from suing, saving the parties and the Court considerable time and expense.  This additional fact supports sanctions.  *See, e.g.*, *Smart Options*, 2013 WL 500861 (awarding sanctions where the unreasonableness of the prefiling investigation was evident, among other reasons, because plaintiff could have easily and cheaply discovered the product did not infringe by testing the product).

### v.  Because Plaintiffs Failed to Conduct a Reasonable Prefiling Investigation, Rule 11 Sanctions Must Be Imposed

Plaintiffs' patent infringement claim was objectively frivolous in view of the facts known or available to Plaintiffs at the time this suit was filed.   Plaintiffs should have been aware that their claim was frivolous, and would have been had they made a reasonable prefiling investigation into the claim.   Because no reasonable investigation was made, sanctions must be imposed.  *Jones*, 49 F.3d at 695.

### c.  Sanctions May be Imposed Against Plaintiffs or Their Attorney

Sanctions may be imposed on the attorney who signed the offending paper or against a party.  Fed. R. Civ. P. 11(c)(1).  Rule 11 sanctions against a party are proper if the client "knew or should have known that the allegations in the complaint were frivolous." *Byrne v. Nezhat*, 261 F.3d 1075, 1117 (11th Cir. 2001).  "[A] court may sanction a party who is neither an attorney nor the signor of the pleadings if the party makes factual

misrepresentations in the pleadings or is the 'mastermind' behind the frivolous case." *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Solutions, LLC*, No. 3:10-CV-978-J-37JBT, 2011 WL 7030963, at *3 (M.D. Fla. Nov. 10, 2011), *report and recommendation adopted by* 2012 WL 115585 (M.D. Fla. Jan. 14, 2012); *Byrne*, 261 F.3d at 1118.

Jerry Harvey, Plaintiffs' sole declarant, is the founder, owner, and manager of both Plaintiffs, with Plaintiff Jerry Harvey Audio Holding, LLC holding title to the '463 Patent, and Jerry Harvey Audio, LLC being the entity "that makes and sells [Mr. Harvey's] patented invention." (Dkt. #24, ¶ 2.) Mr. Harvey is the sole inventor of the '463 Patent, which he assigned to Jerry Harvey Audio Holding, LLC. (*Id.*, ¶ 6.) In short, Jerry Harvey *is* Plaintiffs, or at the very least exercises direct decision and control over the actions taken by Plaintiffs.

Plaintiffs' amended complaint and preliminary injunction motion are largely identical to Mr. Harvey's declaration. (*Compare* Dkt. #22-23, *to* Dkt. #24.) The infringement allegations in the original complaint are largely identical to those in the amended complaint, save for the addition of new accused devices. (*Compare* Dkt. #1, *to* Dkt. #22.) Given the nearly identical nature of Mr. Harvey's declaration and the challenged pleadings, it is evident Plaintiffs are parties who made factual misrepresentations in the pleadings, and are the "masterminds" behind this frivolous lawsuit. Accordingly, sanctions may be imposed on Plaintiffs, in lieu of Plaintiffs' attorney and Plaintiffs' attorney's law firm,[11] should the Court determine such action would be more appropriate. *Byrne*, 261 F.3d at 1118.

---

[11] When a law firm's partner, associate, or employee violates Rule 11, the law firm must also be held responsible absent extraordinary circumstances. Fed. R. Civ. P. 11(c)(1); *see also* Fed. R. Civ. P. 11 advisory committee's note (1993) ("[I]t is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency.").

## IV.    CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court enter an order dismissing this suit, awarding Defendant its fees and costs incurred in defending this action and in preparing and presenting the instant Motion, and granting Defendant leave to file a bill of costs for the costs and fees Defendant has incurred.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)

The undersigned certifies that counsel for Defendant has conferred with Plaintiffs' counsel in a good faith effort to resolve or narrow the issues presented in this Motion, but counsel were unable to agree upon the requested relief.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.10(j), Defendant respectfully requests that the Court schedule oral argument on Defendant's motion.  Defendant estimates that no more than 30 minutes per side is needed for argument.

Dated this 1st day of May, 2015.

s/ Hillary A. Brooks_____
Hillary A. Brooks
*Admitted Pro Hac Vice*
Delfina S. Homen
*Admitted Pro Hac Vice*
MARGER JOHNSON & McCOLLOM,
P.C.
210 SW Morrison St., Ste. 400
Portland, OR 97204
(503) 222-3613
hillary.brooks@techlaw.com
delfina.homen@techlaw.com
*Lead trial counsel for Defendant,*
*1964 Ears, LLC*

Richard E. Fee
Florida Bar No. 813680
Kathleen M. Wade
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 N. Franklin Street
Tampa, Florida  33602
(813) 229-8008
rfee@feejeffries.com
kwade@feejeffries.com
*Local trial counsel for Defendant,*
*1964 Ears, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 1, 2015, I served a true and correct copy of the foregoing on **Daniel Ben Ravicher, Esquire**, Ravicher Law Firm, 2000 Ponce De Leon Blvd., Suite 600, Cora Gables, FL 33134, by transmitting full, true, and correct copies thereof via First Class Mail on the date set forth above.


s/ Lisa Davis_____
Lisa Davis

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 28, 2015, I filed a true and correct copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: **Daniel Ben Ravicher, Esquire**, Ravicher Law Firm, 2000 Ponce De Leon Blvd., Suite 600, Cora Gables, FL 33134, dan@ravicher.com.

s/ Delfina S. Homen_____
Hillary A. Brooks
*Admitted Pro Hac Vice*
Delfina S. Homen
*Admitted Pro Hac Vice*
MARGER JOHNSON &
McCOLLOM, P.C.
210 SW Morrison St., Ste. 400
Portland, OR 97204
(503) 222-3613
hillary.brooks@techlaw.com
delfina.homen@techlaw.com
*Lead trial counsel for Defendant,
1964 Ears, LLC*

Richard E. Fee
Florida Bar No. 813680
Kathleen M. Wade
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 N. Franklin Street
Tampa, Florida  33602
(813) 229-8008
rfee@feejeffries.com
kwade@feejeffries.com
*Local trial counsel for Defendant,
1964 Ears, LLC*

22