**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JERRY HARVEY AUDIO HOLDING, LLC,**
**and JERRY HARVEY AUDIO, LLC,**

                                   **Plaintiffs,**        **Case No. 6:14-cv-02083-CEM-KRS**

   **v.**

**1964 EARS, LLC, and EASTERWOOD &**
**ASSOCIATES, LLC, d/b/a EARS 2 HEAR,**

                                   **Defendants.**
_____

**PLAINTIFFS' OPPOSITION TO DEFENDANT 1964 EARS, LLC'S**
**MOTION FOR RULE 11 SANCTIONS**

   Pursuant to Local Rule 3.01, Plaintiffs Jerry Harvey Audio Holding, LLC, and Jerry

Harvey Audio, LLC, (collectively "JH Audio") hereby respond in opposition to Defendant

1964 Ears, LLC's ("1964 Ears") Motion for Rule 11 Sanctions (Dkt. 67).

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

   1964 Ears argues JH Audio failed to perform a reasonable pre-suit investigation by not

obtaining and testing each accused infringing canalphone before drawing infringement

conclusions. However, even 1964 Ears concedes there is no such rule. Here, JH Audio's

infringement allegations were supported by Mr. Harvey's expert opinion after reviewing detailed

photographs and technical descriptions of the accused infringing canalphones as well as

performing a physical hands-on inspection of two reasonably available pre-suit. 1964 Ears

disputes Mr. Harvey's opinion regarding a couple claim elements, but provides no evidence to

show his opinions are frivolous, nor does 1964 Ears try to disqualify Mr. Harvey as an expert.

On the merits, 1964 Ears makes just one argument, that "testing" it recently performed indisputably renders frivolous JH Audio's claim for patent infringement because the "testing" supposedly shows the accused canalphones do not satisfy a single element of claim 1 of JH Audio's patent. That element, however, relates to how the two high frequency drivers in 1964 Ears' accused infringing canalphones are "positioned." No testing is required to conclude that the accused infringing canalphones have two high frequency drivers "positioned" in the way claimed by JH Audio's patent. Merely looking at the figures of the patent-in-suit and comparing them to 1964 Ears' accused infringing devices shows that the high frequency drivers in each are positioned in exactly the same way. 1964 Ears also fails to provide any details about or expert support for its "testing," rendering it inadmissible and unreliable.

In short, for these reasons, and others, discussed more fully below, JH Audio's pre-suit investigation was entirely reasonable and 1964 Ears' motion for sanctions should be denied.

## II.   FACTS

### A.   JH Audio's Pre-suit Investigation

Prior to the filing of the original Complaint, the Amended Complaint, and the Motion for Preliminary Injunction in this matter, JH Audio performed a detailed and complete analysis of infringement of the patent-in-suit by the accused devices. D. Harvey[1], ¶ 6. Mr. Jerry Harvey, JH Audio's founder, owner and manager, is the sole named inventor of the patent-in-suit and intimately familiar with it and its claims. D. Harvey, ¶¶ 3, 4. In analyzing infringement of his patent, Mr. Harvey reviewed detailed photographs, technical descriptions and other information about the accused devices. D. Harvey, ¶ 6. Mr. Harvey also relied on his hands-on inspection of both the V6 and V8 products that were available to him at trade shows. D. Harvey, ¶ 7.

---

1   "D. Harvey" refers to the Declaration of Mr. Jerry Harvey filed in support hereof.

Mr. Harvey set forth his infringement analysis, which included an element-by-element comparison of the patent-in-suit's claims to the accused devices, in his declaration supporting the Motion for Preliminary Injunction. D. Harvey, ¶ 5; Dkt. 24.

Mr. Harvey has decades of experience developing, making and using canalphones, which has given him the ability to determine whether two high frequency drivers contained within a canalphone are producing similar frequencies, whether they are positioned such that the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion, and whether they produce distinguishable frequencies to a person using the system of 12-18kHz. D. Harvey, ¶ 11. Based on his experience, hands-on inspection of the V6 and V8 products, and review of the detailed photographs, technical specifications and other information about each of 1964 Ears accused canalphones, Mr. Harvey previously concluded and remains of the opinion that each has two high frequency drivers that produce similar frequencies, are positioned where the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion, and produce distinguishable frequencies to a person using the system of 12-18kHz. D. Harvey, ¶ 12.

**B.      1964 Ears' High Frequency Drivers**

1964 Ears does not manufacture the high frequency drivers in its accused infringing canalphones. D. Harvey, ¶ 15. Rather, Knowles Corporation is 1964 Ears' supplier of high frequency drivers, a fact 1964 Ears' CEO, Vitaliy Belonozhko, told JH Audio's Mr. Harvey. *Id*. Knowles is also the supplier of high frequency drivers to JH Audio. *Id*. Indeed, Mr. Harvey worked with Knowles to design and develop high frequency drivers for his dual high frequency driver canalphone invention because none existed at the time. *Id*. The dual high frequency drivers sold by Knowles to 1964 Ears are the same or substantially similar to those designed and

developed by Mr. Harvey. *Id*. Thus, Mr. Harvey is familiar with the dual high frequency drivers made and sold by Knowles used in both JH Audio's and 1964 Ears' canalphones. *Id*.

Knowles' dual high frequency drivers used in JH Audio's and 1964 Ears' canalphones come in pairs made as a single unit. D. Harvey, ¶ 16. The units are manufactured by Knowles such that the two high frequency drivers are positioned so their oscillations interact to reduce harmonic distortion. *Id*. Below is a set of images to illustrate.



Knowles Dual High Frequency Driver



JH Audio's Patented JH13 Canalphone



Patent-in-suit Fig. 2



1964 Ears V6 Accused Infringing Canalphone

The top left is a Knowles dual high frequency driver component. *Id*. The top right is a photograph of JH Audio's JH13 product (this photograph was submitted to the Patent Office as

Fig 2. of Mr. Harvey's patent application). *Id*. The bottom left is Fig. 2 from JH Audio's patent-in-suit (the Patent Office does not use photographs in issued patents, thus this is a line drawing of the photograph of JH Audio's JH 13 product). *Id*. The bottom right is 1964 Ears' V6 accused infringing canalphone. *Id*. The dual high frequency driver components are circled. *Id*. Not only does each image show a pair of high frequency drivers positioned so that their oscillations interact to reduce harmonic distortion, the positioning of the high frequency drivers in 1964 Ears' V6 is virtually the same as that in JH Audio's JH 13 and Fig. 2 of JH Audio's patent. *Id*.

### C.     1964 Ears' Intention To Copy JH Audio's Now-Patented JH13 Product

At a trade show in 2012, 1964 Ears' CEO, Vitaliy Belonozhko, visited JH Audio's booth and inspected JH Audio's JH13 product. D. Harvey, ¶ 9. Mr. Belonozhko closely looked at the JH13 and then told Mr. Harvey he could copy it. *Id*. Mr. Harvey informed Mr. Belonozhko that there were patents pending on it. *Id*. Mr. Belonozhko was so disrespectful and disruptive that he was subsequently banned for two years from attending the show. *Id*. The JH13 is the product in the photographs submitted with Mr. Harvey's application for the patent-in-suit. *See* U.S. Pat. App. Pub. No. 20110293112 A1. It is also listed in Mr. Harvey's preliminary injunction declaration as one of JH Audio's products covered by the patent-in-suit. Dkt. 24, ¶ 46.

### III.    ARGUMENT

"Rule 11 calls for sanctions to be imposed on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose.'" *S. Bravo Sys., v. Containment Techs. Corp*, 96 F.3d 1372, 1374-75 (Fed. Cir. 1996) (internal citations omitted). "A 'frivolous' argument or claim is one that is 'both baseless and made without a reasonable and competent inquiry.'" *Id*.

- 5 -

In patent cases, the law of the regional circuit – not the Federal Circuit – governs Rule 11 determinations. *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002).

> Under the Eleventh Circuit's jurisprudence, Rule 11 sanctions should only be imposed in limited circumstances where the frivolous nature of the claims-at-issue is unequivocal. The Eleventh Circuit has explained that: "Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (emphasis in original).

*Carter v ALK Holdings, Inc.*, 605 F.3d 1319, 1323 (Fed. Cir. 2010). "All doubts as to whether Rule 11 has been violated should be resolved in favor of the party who signed the pleading." *Great Lakes Reinsurance (UK) PLC v. Blue Sea, LLC*, 2006 U.S. Dist. LEXIS 59834, *9 (M.D. Fla. Aug. 24, 2006) (*citing McMahan Secs. Co., L.P. v. FB Foods, Inc.*, 2006 U.S. Dist. LEXIS 51741, *2 (M.D. Fla. July 27, 2006)).

This case is not a "limited circumstance" where the claims "unequivocally" have "no factual or legal basis at all." *Carter*, 605 F.3d at 1323. JH Audio performed a reasonable pre-suit investigation that included review of detailed photographs and technical descriptions of the accused infringing canalphones, the accuracy of which 1964 Ears does not dispute, as well as a direct hands-on inspection. Based on this evidence, Mr. Harvey, an undeniable expert in the field, performed an element-by-element infringement analysis comparing the accused devices to the claims of his patent. Any doubt as to whether JH Audio complied with Rule 11 should be resolved in JH Audio's favor. *Great Lakes Reinsurance*, 2006 U.S. Dist. LEXIS 59834 at *9.

A.      **JH Audio Performed A Reasonable Pre-suit Investigations**

      i.      **JH Audio Relied On Detailed Photographs, Technical Descriptions and Hands-On Inspection Of The Accused Devices**

In *Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc.*, the

- 6 -

Federal Circuit applied Eleventh Circuit law and affirmed a Southern District of Florida decision that reliance on only photographs of the accused device was sufficient evidence for a pre-filing infringement investigation. 692 F.3d 1272, 1288-89 (Fed. Cir. 2012). This Court has itself noted that, "the necessary steps in conducting a pre-filing investigation of patent infringement are not very stringent." *Arthrex, Inc. v. Parcus Med., LLC*, 2012 U.S. Dist. LEXIS 156870, *15 (M.D.Fla. 2012) (denying Rule 11 Motion where patentee relied on defendant's literature and website and performed an inspection of accused product samples). In *PPS Data, LLC v. Athenahealth, Inc.*, this Court denied a Rule 11 motion even though patentee relied solely on literature about the accused device. 2012 U.S. Dist. LEXIS 22587, *3 (M.D. Fla. 2012).

Here, JH Audio used detailed photographs and technical descriptions of each of the accused canalphones to compare them to the patent's claims. JH Audio also performed a hands-on inspection of two of the accused products identified in the original Complaint. JH Audio's conclusions were reached by Mr. Harvey, an undisputed expert in the field with decades of experience designing, developing and making canalphones. Based on all this evidence, Mr. Harvey performed an element-by-element infringement analysis as shown by his declaration filed in support of JH Audio's Motion for Preliminary Injunction. Dkt. 24. 1964 Ears' admitted desire to copy JH Audio's then patent-pending, now-patented JH13 product further supports the reasonableness of asserting its products infringe the patent-in-suit. Thus, JH Audio's pre-suit infringement investigation was reasonable.

1964 Ears fails to address in its motion the facts that JH Audio performed hands-on inspections of two of the accused infringing canalphones before filing suit, despite being made aware of those fact before it filed its motion. D. Ravicher[2], ¶ 4. On May 22, counsel for JH Audio

---

2    "D. Ravicher" refers to the Declaration of Daniel B. Ravicher, Esq., filed in support hereof.

provided counsel for 1964 Ears a draft opposition substantially similar to this one, which included a declaration by Mr. Harvey that he had inspected the V6 and V8 products at trade shows in 2012 and 2013. *Id*. JH Audio's counsel also discussed these facts during a conferral telephone call 1964 Ears' counsel on May 27. *Id*. Despite being made aware of JH Audio's hands-on inspection of the V6 and V8 canalphones, 1964 Ears decided to proceed with filing its motion for sanctions and fails to even address those facts. *Id*.

### ii. The Detailed Photographs And Technical Descriptions Relied On By JH Audio Alone Provide A Sufficient Basis To Assert Infringement

1964 Ears' motion is based solely on the argument that JH Audio's pre-suit infringement investigation was unreasonable because the detailed photographs and technical descriptions cited in the Complaint, Amended Complaint and Motion for Preliminary Injunction were insufficient evidence to support JH Audio's infringement conclusions. 1964 Ears argues JH Audio was required to obtain and test each accused device before it could possibly draw reasonable infringement conclusions. Def. Mot. Rule 11, pp. 14-17.

Even putting aside the facts that JH Audio did physically inspect two of the accused devices, facts that 1964 Ears ignores in its motion, the Federal Circuit has said there is no "blanket rule that a patentee must obtain and thoroughly deconstruct a sample of defendant's product to avoid violating Rule 11." *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007). Instead, the "key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis," which "can simply consist of a good faith, informed comparison of the claims of the patent against the accused subject matter." *Q-Pharma Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2002).[3]

---

3   1964 Ears cites a non-Eleventh Circuit district court case for the argument that "*Q-Pharma* 'does not stand for the broad proposition that a plaintiff need not obtain the allegedly

1964 Ears argues that the Federal Circuit's decision in *Instamin* stands for the proposition that, "[f]ailure to obtain and reverse engineer samples is only reasonable where ... there are unreasonable hurdles to obtaining or reverse engineering the device, *and* there is no other legitimate evidence supporting infringement." Def. Mot. Rule 11, p. 10 (emphasis in original). But the Federal Circuit in *Instamin* said the exact opposite:

> In *Q-Pharma*, however, this court did not impose on a patentee a *Rule 11* obligation to perform a simple chemical test on a sample to determine its composition. 360 F.3d at 1302. Instead this court found that the patentee satisfied its *Rule 11* obligations with other reasonable pre-filing inquiries.

483 F.3d at 1338. Thus, even if it is "simple" to test an accused device, a patentee need not do so to perform a reasonable pre-suit infringement investigation.

1964 Ears argues that *Q-Pharma* supports its motion even though the Federal Circuit in that case said Rule 11 had not been violated by a patentee who relied solely on advertising and a list of ingredients in the accused product without doing testing to confirm its conclusions. 360 F.3d at 1302-03. Specifically, 1964 Ears argues three elements of JH Audio's claim 1 can not reasonably be alleged to exist in the accused infringing canalphones by reviewing detailed photographs and technical specifications. Def. Mot. Rule 11, pp. 3-4. 1964 Ears is incorrect.

First, 1964 Ears' does not dispute the presence of a pair of high frequency drivers in each of the accused infringing canalphones, nor the accuracy of the detailed photographs and technical descriptions relied on by JH Audio, nor that Mr. Harvey is an expert in the field. Regarding whether the pair of high frequency drivers in 1964 Ears' accused infringing canalphones "produce similar frequencies, "are positioned" so that their oscillations interact, and "produce

---

infringing product and test it before filing a patent infringement suit.'" Def. Mot. Rule 11, p. 16 (*citing Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09 C 4348, 2011 WL 4729922, at *4 (N.D. Ill. Oct. 6, 2011). JH Audio agrees there is no blanket rule regarding whether obtaining and testing accused devices is required or not. It is a case-by-case analysis.

distinguishable frequencies between 12,000 and 18,000 hertz," JH Audio alleged that they must given the other evidence relied upon, a conclusion supported by Mr. Harvey's expert opinion.

1964 Ears says "no evidence" exists to support JH Audio's infringement allegations and Mr. Harvey's expert opinions, Def. Mot. Rule 11, pp. 4-5, but that is incorrect. First, evidence relied on by JH Audio shows 1964 Ears' accused infringing canalphones are used by customers for personal listening. Thus, Mr. Harvey's expert opinion was and is that, "[t]he high frequency drivers in the [accused] products must produce similar frequencies in order to be an acceptable canalphone product, else users would hear an unsatisfactory distorted sound." See, *e.g.*, Dkt. 24, ¶ 25. Rather than dispute Mr. Harvey's expert opinion or the fact upon which he relied, 1964 Ears instead just says there was no evidence. That is not true. The evidence Mr. Harvey relied on is the fact that 1964 Ears' accused infringing canalphones are meant to be used for listening.

Further, Mr. Harvey's expert opinion was and is that, "to produce a satisfactory sound for users, the high frequency drivers in 1964 Ears' [accused] canalphones must be positioned in such a way that the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion. " See, *e.g.*, Dkt. 24, ¶ 26. Again, Mr. Harvey's expert opinion is based on the evidence that 1964 Ears' accused infringing canalphones are meant to be used for listening.

Lastly, Mr. Harvey's explained that:

> The "Specs" for the [accused canalphones] on 1964 Ears' website referenced above state that they have a "Freq. Response: 10Hz – 20 kHz." That frequency response range must be divided amongst the low, midrange, and high frequency drivers in the [accused] products, leaving the high frequency drivers to produce distinguishable frequencies in the 12,000 hertz to 18,000 hertz range.

See, *e.g.*, Dkt. 24, ¶ 27. Mr. Harvey again identified the evidence providing the basis for his opinion that the pair of high frequency drivers in 1964 Ears' accused infringing canalphones

"produce distinguishable frequencies between 12,000 and 18,000 hertz," namely the "Specs" provided by 1964 Ears, the accuracy of which is not disputed. Again, the argument that JH Audio's allegations and Mr. Harvey's expert opinions have no evidentiary support is incorrect.

Further, regarding the first two limitations, whether the pair of high frequency drivers in 1964 Ears' accused devices "produce similar frequencies" and "are positioned where the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion," JH Audio's assertion of infringement rested, in part, on the fact that the terms "balanced" and "tuned" are not mere marketing fluff, but are instead technical terms that, when used to describe armatures or armature drivers inside a canalphone, mean they produce similar frequencies and are positioned so that the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion. D. Harvey, ¶ 13. Thus, because 1964 Ears' technical descriptions of the accused products say they include "precision balanced" and "precision tuned" armatures or armature drivers[4], it was reasonable to assert that the high frequency drivers is 1964 Ears' accused canalphones produce similar frequencies and are positioned so that the oscillation of one interacts with the oscillation of the other to reduce harmonic distortion. As in *Q-Pharma*, testing the devices was not needed to assert infringement of those elements. 360 F.3d 1302.

Regarding the third limitation, whether the pair of high frequency drivers in 1964 Ears' accused devices "produce distinguishable frequencies to a person using the system comprising 12,000 hertz to 18,000 hertz," JH Audio's assertion of infringement rested, in part, on the fact that armatures or armature drivers inside a canalphone that produce frequencies 12,000 hertz and above are "high frequency drivers." D. Harvey, ¶ 14. That is both the plain and ordinary meaning

---

4    The evidence for this is provided in the original Complaint, the Amended Complaint, the Motion for Preliminary Injunction, and Mr. Harvey's Declaration in support of JH Audio's Motion for Preliminary Injunction. *See*, *e.g.*, Dkt. 24, ¶¶ 12, 13, 15, 16, 17, 20, 21, and 24.

of that term and also how it is used in the patent. *Id;* '463 Patent, 3:55-66. Thus, because 1964 Ears' technical descriptions of the accused canalphones say they have a frequency response 12kHz and above[5], a fact that is not disputed, it was reasonable to assert that they have "high frequency drivers" that produce distinguishable frequencies to a person using the system comprising 12,000 hertz to 18,000 hertz. Indeed, 1964 Ears' description of the accused devices even say they have "high ... frequency" drivers. See, e.g., Amended Complaint (Dkt. 22), ¶ 29 ("the IEM's high, mid and low frequency sound components"). Again, as in *Q-Pharma*, testing of the accused devices was not needed to assert infringement of that element. 360 F.3d 1302.

### iii.    JH Audio Was Not Required To Obtain And Test Every Accused Device

As discussed above, Rule 11 merely requires either (i) photographic, documentary or other evidence of the accused device that enables an element-by-element infringement analysis, or (ii) inspection of the accused device to perform such an analysis. Here, JH Audio satisfied both. It reviewed detailed photographs and technical descriptions of the accused infringing canalphones and performed a hands-on inspection of the V6 and V8 products.

Regarding the latter, 1964 Ears states in its motion that, "[e]very accused device was available, openly and notoriously, ***before*** Plaintiffs initiated this lawsuit on December 19, 2014." Def. Mot. Rule 11, p. 5 (emphasis in original). This statement is supported by 1964 Ears' CEO, Mr. Belonozhko, in his concurrently filed declaration. D. Belonozhko (Dkt. 68), ¶ 2. But that statement contradicts what Mr. Belonozhko told the Court in his declaration submitted in support of 1964 Ears' previously filed motions to dismiss and transfer. Back then he said the A12, A10,

---

5    The evidence for this is provided in the original Complaint, the Amended Complaint, the Motion for Preliminary Injunction, and Mr. Harvey's Declaration in support of JH Audio's Motion for Preliminary Injunction. *See, e.g.,* Dkt. 24, ¶¶ 12, 13, 15, 16, 17, 20, and 21.

U8 and U6 canalphones could not be purchased through 1964 Ears websites when this suit was filed, that the only way to purchase them was through 1964 Ears' Kickstarter campaign, and that none had been shipped prior to December 19, 2014. Dkt. 35-1, ¶ 9, 11. Now he says the opposite. The previous statement is what JH Audio believes, that the four new accused products were not "available, openly and notoriously" to JH Audio before the original Complaint in this matter was filed. Thus, any failure to obtain and test them was not unreasonable.

Even if all of the accused devices had been "available, openly and notoriously," JH Audio still would not have been required to obtain and inspect each one, as even 1964 Ears admits in its motion that, "it may not always be necessary to inspect every accused product separately to confirm infringement, *if* there is other evidence 'sufficient to permit a reasonable inference that all the accused products infringe.'" Def. Mot. Rule 11, p. 14 (*citing Antonious*, 275 F.3d at 1075).

Here, the evidence relied on by JH Audio for its infringement conclusions was sufficient to permit the inference that all of the accused products infringe. 1964 Ears makes no argument in its motion why there is a difference between its products that requires each be inspected. Further, JH Audio knew before filing suit that 1964 Ears obtains the high frequency driver components used in its accused infringing canalphones from Knowles Corporation. JH Audio is intimately familiar with those components because Mr. Harvey worked with Knowles to design and develop them and Knowles also supplies the dual high frequency driver components to JH Audio. Thus, because JH Audio knew the dual high frequency drivers 1964 Ears uses come from the same source and are based on Mr. Harvey's design, JH Audio had a reasonable basis to conclude that no independent inspection of each accused infringing canalphone was necessary.

1964 Ears relies heavily on *Judin v United States*, where the Federal Circuit nearly

twenty years ago vacated a district court's denial of Rule 11 sanctions because the patent holder and his attorney only "observed from a distance the accused devices" and did not "attempt[] to obtain the device, or a technical description of it." 110 F.3d 780, 781, 783 (Fed. Cir. 1997). Here, JH Audio reviewed detailed photographs and technical descriptions for each of the accused infringing products and relied on a hands-on physical inspection of the V6 and V8 products. Thus, the evidentiary basis for asserting infringement here is much more than that in *Judin*.

The Federal Circuit has also recently criticized broad interpretations of *Judin* like that suggested by 1964 Ears:

> DeAngelo argues that *Judin v. United States*, 110 F.3d 780 (Fed. Cir. 1997), compels the conclusion that MES's mere observations of DeAngelo products cannot constitute an adequate investigation. DeAngelo's reliance on *Judin* is misplaced. In *Judin*, the plaintiff observed allegedly infringing products from a distance, but never sought access to investigate them more closely. *Id*. at 784. Here, MES directly requested from DeAngelo, in writing, information about DeAngelo's allegedly infringing devices. When that information was not forthcoming, MES took the photographs of DeAngelo's products that were used as the basis for filing suit. At trial a number of witnesses testified that they could discern the features covered by the asserted claims from the digital color photographs. This is not a case like *Judin* where the plaintiff sued without seeking access to examine allegedly infringing devices.

*Woods*, 692 F.3d at 1288-89. Here, JH Audio did not merely observe 1964 Ears' accused devices from a distance and fail to seek more information about them. JH Audio relied on detailed photographs that showed the accused devices' internal components and technical descriptions that listed their various properties. This evidence, along with JH Audio's hands-on inspection of the V6 and V8, enabled JH Audio to identify each and every element of the asserted patent claims in the accused devices. 1964 Ear's suggestion that *Judin* required JH Audio obtain and test every accused device is as flawed as the defendant's in *Woods*. Any doubt on the issue should be resolved in JH Audio's favor. *Great Lakes Reinsurance*, 2006 U.S. Dist. LEXIS 59834 at *9.

iv.     **1964 Ears' Cites District Court Cases From Outside The Eleventh Circuit With Substantially Different Facts**

1964 Ears cites some district court cases from outside the Eleventh Circuit to support its position, but not only are they non-binding precedent that do not apply Eleventh Circuit Rule 11 law, they are also all distinguishable on the facts.

In *Centillion Data Sys., LLC v. Convergys Corp.*, the court noted, "[w]hether the patent holder must obtain the product an[d] analyze it ... depends on the circumstances surrounding the pre-filing infringement analysis." 2006 U.S. Dist LEXIS 846, *10 (S.D. Ill. 2006). After discussing *Q-Pharma*, the court found, "there was no ingredient list from which [the patentee] could make the inference that" the claim limitations were met as the materials relied on by the patentee were mere "advertising fluff." *Id*. at *8. Here, JH Audio provided the exact "ingredient lists" of the accused infringing devices relied on, i.e. the detailed photographs and technical descriptions. Those materials are not "advertising fluff," as they provide precise high-resolution depictions and functional details of the accused canalphones. Thus, *Centillion* is inapplicable. It was also issued before the Federal Circuit's decisions in *Intamin* and *Woods*, both of which held a patentee need not obtain and deconstruct accused devices before making infringement allegations. 483 F.3d 1328; 692 F.3d 1272. In those cases, the Federal Circuit held reliance on public statements and photographs, exactly the evidence JH Audio relied on here, was sufficient.

The next non-Eleventh Circuit district court opinion cited by 1964 Ears, *Network Caching Tech., LLC v. Novell, Inc.*, turned on the fact that the patentee relied on "evidence of infringement ... whose reliability and actual resemblance to the products in question is questionable." 2003 U.S. Dist. LEXIS 9881, *19 (N.D. Ca. 2003). Here, JH Audio relied on detailed photographs and technical descriptions "whose reliability and actual resemblance to the

products in question" 1964 Ears has not disputed at all. If 1964 Ears wants to tell the Court that the detailed photographs and technical descriptions of its products on its own website are false and misleading, it can do so, but even if they were, that would not make JH Audio's reliance on them unreasonable. Thus, *Network Caching* is inapplicable to this case.

1964 Ears further argues that because at least some of the accused canalphones here have been publicly available for some time, a duty of JH Audio to obtain and test them was triggered. Def. Mot. Rule 11, p. 12. But such an argument has never received Federal Circuit blessing, nor does it diminish the reasonableness of JH Audio's reliance on detailed photographs and technical descriptions here. Further, JH Audio did physically inspect the V6 and V8 devices, the two accused infringing canalphones reasonably available to it at trade shows prior to JH Audio's filing of this suit. Thus, 1964 Ears' argument lacks factual basis as well. Lastly, like *Centillion*, *Network Caching* was issued before the Federal Circuit's decisions in *Intamin* and *Woods*.

The next non-Eleventh Circuit district court opinion cited by 1964 Ears, *Smart Options, LLC v. Jump Rope, Inc.*, involved a defendant who provided several explicit non-infringement arguments in its Rule 11 motion, describing how the accused website worked and explaining why it did not infringe the asserted patent by identifying multiple claim limitations that were not present. 2013 U.S. Dist. LEXIS 17743, *18-19 (N.D. Ill. 2013). Here, 1964 Ears' Rule 11 motion contains no such explanation. 1964 Ears' makes only a single substantive non-infringement argument, that one element of claim 1 is not literally found in the accused devices.[6] Def. Mot. Rule 11, p. 20. This is supposedly proven by "testing" 1964 Ears recently performed, but 1964 Ears provides no details whatsoever about this "testing." There is only a bald conclusory statement by 1964 Ears' CEO in his concurrently filed declaration that, "[r]ecent testing proved

---

6   1964 Ears fails to argue the element is not satisfied by the Doctrine of Equivalents.

that the Accused IEMs do not meet the ... claim limitation." D. Belonozhko, ¶ 3. 1964 Ears does not provide the identify of the person or firm that conducted the "testing", or the protocols or methods used to perform the "testing", or the results of the "testing", or any other information required for the "testing" to be scientifically reliable admissible evidence. F.R.E. 702 (requiring "sufficient facts or data" and that testimony be "the product of reliable principles and methods"). Mr. Belonozhko does not even present himself as an expert qualified to provide such an opinion. Thus, 1964 Ears' "testing" and Mr. Belonozhko's non-expert declaration do not show "unequivocally" that JH Audio's infringement allegation was frivolous. *Carter*, 605 F.3d at 1323.

Further, as this Court has recognized, while a self-serving affidavit of a defendant disputing infringement may call into question the accuracy of the public statements relied on by plaintiff in its pre-suit infringement analysis, or the credibility of the affiant, it does not "cast doubt on the reasonableness of Plaintiff's reliance on Defendant's public statements." *PPS Data*, 2012 U.S. Dist. LEXIS 22587 at *3-6 (*citing Q-Pharma* as "rejecting the argument that a pre-filing infringement analysis which relied solely on the defendant's advertising statements was inadequate"). Thus, even if 1964 Ears' "testing" was admissible and arguably showed the accused devices may not meet a single limitation of the asserted patent claims, that would still not make JH Audio's pre-suit investigation here a "limited circumstance" where the claims "unequivocally" have "no factual or legal basis at all." *Carter*, 605 F.3d at 1323.

Lastly, testing is not necessary, or even relevant, to whether the pair of high frequency drivers in 1964 Ears' accused infringing devices are "positioned" in the way claimed by JH Audio's patent. A visual inspection of the accused devices is sufficient to show the claim element is satisfied. The images below compare Fig. 2 of JH Audio's patent (which is an

embodiment of Mr. Harvey's claimed invention) to 1964 Ears' accused V6 canalphone. A comparison of these images shows that the high frequency drivers (circled in red) are positioned identically in both. Thus, 1964 Ears' argument that the high frequency drivers in its accused infringing canalphones are not "positioned" in the way claimed by JH Audio's patent is incorrect.



Patent-in-suit Fig. 2



1964 Ears V6 Accused Infringing Canalphone

1964 Ears' argument that "testing" disproves the dual high frequency drivers in its accused infringing canalphones are "positioned" in the way described and claimed by Mr. Harvey's patent has no support in the patent's claims, specification or prosecution history. There is in fact no mention of "testing" anywhere in Mr. Harvey's patent. Instead, the "positioned" claim element relates to how a first and second high frequency driver are physically placed *vis-a-vis* one another, which can be seen with a naked eye. JH Audio's patent explains, "The system **10** further includes the second high frequency driver **14b** being positioned where its oscillation interacts with the oscillation of the first high frequency driver **14a** to deliver at least one of lower distortion than a standard canalphone high frequency driver and lower distortion than two standard canalphone high frequency drivers that do not interact with each other." U.S. Pat. No. 8,897,463 (Dkt. 22-1), 4:59-65 (bold numbers correspond to items numbered in Fig. 2).

- 18 -

Lastly, in *Smart Options*, the cost of acquiring the accused software was only $35 and $40, whereas here the cost would have been thousands of dollars. Dkt. 24, ¶ 46 (showing 1964 Ears' accused canalphones cost between $1,200 and $480 each). Thus, given that JH Audio here compared its patent claims to detailed photographs and technical descriptions of the accused products, performed a hands-on inspection of the two accused devices available to it at trade shows, four of the accused devices were not available pre-suit, and it would have cost hundreds to thousands of dollars to purchase each device even if available, *Smart Options* is inapplicable.

1964 Ears lastly cites the Federal Circuit's decision in *Eon-Net LP v Flagstar Bancorp*, but there it was the patentee's claim interpretation that was frivolous, not its infringement analysis. 653 F.3d 1314, 1329 (Fed. Cir. 2011). 1964 Ears makes no argument that JH Audio's claim interpretation here was frivolous. Thus, *Eon-Net* is entirely irrelevant.

### B. If The Court Is Not Satisfied That 1964 Ears' Motion For Rule 11 Sanctions Should Be Denied, It Should Stay The Motion Until Liability Is Determined

Rule 11 sanctions for improper pre-suit investigation are to be denied – or at least stayed – if the patentee has not yet lost its case. *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1262 (Fed. Cir. 2008) ("Dominant has not identified a single case in which, when a party had not lost the underlying litigation, a court awarded Rule 11 sanctions against that party for failing to conduct a sufficient infringement analysis prior to filing suit."); *Antonious*, 275 F.3d 1072 ("court withheld ruling on [] sanctions motion until [] liability issues were [] resolved").

Here, no resolution of the underlying merits has yet been reached. Thus, 1964 Ears' Motion for Rule 11 Sanctions is premature and should, at minimum, be stayed if the Court is not already convinced that it should be denied outright.

### C.      If The Court Grants The Motion, Neither Dismissal Nor Fees Are Justified

If the Court finds a Rule 11 violation has occurred, it has broad discretion in determining what sanction, if any, is warranted. *Cooter & Gell v . Hartmarx Corp.*, 496 U.S. 384, 404 (1990). 1964 Ears argues sanctions "must" be imposed, Def. Mot. Rule 11, p. 18, but that is incorrect.[7] The Rule's plain language says, "the court may impose an appropriate sanction," and "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(1), (c)(4). "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *Id*. at *Notes of Advisory Committee on 1993 Amendments*.

Regarding what sanction may be appropriate, "[d]ismissing a case with prejudice is a harsh sanction," not justified by the facts here, where JH Audio performed substantial pre-suit infringement analysis and 1964 Ears does not even factually dispute that the accused infringing canalphones include all but one of the patent's claim elements. *KI Ventures, LLC v. Fry's Elecs., Inc.*, 579 Fed. Appx. 985, 990 (Fed. Cir. 2014). There also has been no ruling against JH Audio on the merits, nor has there been repeated violation of Rule 11 or any other rule.

An award of costs, including attorney's fees, is unjustified for the same reasons.

## IV.    CONCLUSION

JH Audio respectfully requests that the Court deny Defendant 1964 Ear's Motion for Rule 11 Sanctions. At minimum, the Court should stay consideration until the merits are resolved.

---

7   The 1983 version of the Rule provided a court "shall" impose a sanction when a violation occurs,  but the 1993 version that exists today provides a court "may" impose a sanction. This change from mandatory to discretionary was one of the major revisions made in 1993.

Dated: June 11, 2015                 Respectfully submitted,

                                       _s/*Daniel B. Ravicher*_
                                       Daniel B. Ravicher
                                       Florida Bar No. 102809
                                       RAVICHER LAW FIRM
                                       2000 Ponce De Leon Blvd., Ste 600
                                       Coral Gables, FL 33134-4422
                                       Telephone: (786) 505-1205
                                       E-Mail: dan@ravicher.com

                                       *Counsel for Plaintiffs Jerry Harvey Audio Holding, LLC, and Jerry Harvey Audio, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 11, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

   _s/Daniel B. Ravicher_
Daniel B. Ravicher
Florida Bar No. 102809
RAVICHER LAW FIRM
2000 Ponce De Leon Blvd., Ste 600
Coral Gables, FL 33134-4422
Telephone: (786) 505-1205
E-Mail: dan@ravicher.com

_Counsel for Plaintiffs Jerry Harvey Audio Holding, LLC, and Jerry Harvey Audio, LLC_